***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman and the briefs and arguments of the parties. The appealing parties have not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At all relevant times, plaintiff was an employee of defendant-employer.
3. The employer is self-insured. Brentwood Services is the adjusting agent.
4. Plaintiff alleges that on May 27, 2004 he sustained a compensable injury by accident arising out of and in the course of his employment by defendant, to wit, a fractured left hip. Defendant denies plaintiff's allegations.
5. Defendant is stipulating that at some point during plaintiff's employment, plaintiff worked with Jack Jackson on a black Toyota 4 x 4 truck with body damage.
6. Plaintiff last worked at defendant-employer on July 3, 2004. Plaintiff seeks to be awarded total disability benefits beginning July 5, 2004 as well as medical compensation.
In addition, the parties stipulated into evidence the following:
1. Packet of medical records and reports.
2. Written stipulation and attached witness statements.
3. Industrial Commission forms and filings.
The Pre-Trial Agreement dated November 30, 2004, which was submitted by the parties, is incorporated by reference.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was forty-six years old at the time of the hearing before the Deputy Commissioner and is a high school graduate and has completed a training program in automotive technology. In August 1998 he began working for defendant-employer at its Chevrolet dealership. He subsequently transferred to the Toyota dealership in May 2002 and continued working there as a service technician. His job duties involved performing maintenance and repair work on vehicles. The technicians worked in teams and were expected to assist each other when necessary. A number of tasks performed by the technicians required at least two people to complete.
2. On an unknown date in late May or early June 2004, plaintiff was walking across the shop area when fellow technicians Jack Jackson and Roger Martin asked him to steer a black pickup truck, which had been towed into the service area, while they pushed the vehicle onto one of the lifts. Plaintiff complied. Mr. Jackson then asked plaintiff to stay in the truck long enough for him to bleed the brakes, and he raised the truck up on the lift with plaintiff still sitting in it. Plaintiff applied pressure to the brake pedal while Mr. Jackson bled the brakes. This was a job which required a second person.
3. Mr. Jackson then stepped away leaving plaintiff in the truck. Plaintiff had a customer waiting on the vehicle in his bay, so he decided not to wait for Mr. Jackson to return and lower the truck. He climbed out of the truck onto the lift frame, closed the door, went to the edge of the lift frame and dropped five to six feet to the floor. His left heel landed on a metal brace for the lift support, causing him to lurch forward. When he landed in this manner, he immediately felt pain in his left hip, but he did not report an injury at the time, although he subsequently mentioned it to coworkers. Rather, he walked back to his bay and resumed working. He did not believe that the injury was serious.
4. During the next two to three weeks, coworkers observed plaintiff limping. When they inquired about the problem, plaintiff told them that he had hurt himself when he jumped down from the truck. At some time during that period, his supervisor, James Flippin, scolded him for doing an improper job involving balancing tires. Plaintiff responded by saying he was hurting because of the incident where he had jumped down from the truck and that he was not thinking clearly due to the pain. Mr. Flippin could not understand all of what he said, however, and thought he was mumbling. There was probably a certain amount of ambient noise in the service area. In addition, Mr. Flipping was very busy with a lot of people and activities to manage. Consequently, plaintiff did not actually communicate with him about the injury on that occasion.
5. The pain in his hip grew progressively worse to the point that plaintiff finally decided that he needed medical attention. On June 18, 2004 he saw Misty Buchanan, the physician's assistant at the family practice where he received medical treatment. Ms. Buchanan was of the impression that his leg pain was probably due to radiculopathy from a back problem and that he might have a knee condition as well, so she ordered x-rays and MRIs of the lumbar spine and left knee, which proved to not be diagnostic. Plaintiff's symptoms increased despite the medication she had prescribed for him and he began to have considerable trouble walking. On July 8, 2004 he returned to Ms. Buchanan complaining of severe pain which radiated from his hip to his knee. On that occasion, she referred him to an orthopedic surgeon.
6. Prior to plaintiff's last visit with Ms. Buchanan, the hospital called his employer to inquire about how the bills were to be filed. Amanda Link in human resources then contacted plaintiff, who described the incident in question. Ms. Link sent him a Form 18 to complete but instructed him to file his medical bills with his general health insurance until the servicing agent made a decision regarding the workers' compensation claim. She then asked Mr. Flippin if he were aware of plaintiff getting hurt at work, and he was not. Consequently, defendants subsequently denied the claim.
7. On July 15, 2004 plaintiff was examined by Dr. Bolstad, an orthopedic surgeon, who had his left hip and pelvis x-rayed. The x-rays revealed obvious avascular necrosis of the femoral head of the hip with some flattening and irregularity of the subchondral bone and loosening of the cartilage. Consequently, Dr. Bolstad diagnosed his condition as stage III avascular necrosis of the left hip involving the entire weight-bearing surface. It was the doctor's opinion that plaintiff had pre-existing avascular necrosis, which involved blockage of the blood supply to the bone, and that the incident where plaintiff jumped down from the lift had separated the subchondral bone from the underlying bony support, causing the onset of symptoms and accelerating the need for surgery.
8. On August 27, 2004 Dr. Bolstad performed total hip replacement surgery to plaintiff's left leg. He followed plaintiff's recovery until his testimony was taken in this case. As of the last office visit on December 9, 2004, he had still not released plaintiff to return to work or from medical care. At that time plaintiff was experiencing symptoms which appeared to be related to bursitis since x-rays revealed the prosthesis to be in good position.
9. Plaintiff did not remember the date he was hurt. Since he was not working on one of his own work orders at the time, it was not possible for him to locate records to show when the incident occurred. Apparently the records from the service department were too voluminous to review. Defendants did locate an invoice for work performed on a pickup truck on June 26, 2004, but that was not the truck plaintiff was helping with at the time of his injury. The date was after he had described the injury to Ms. Buchanan. Furthermore, Mr. Jackson indicated that he saw plaintiff limping at work two weeks after the actual incident and other coworkers reported seeing plaintiff limping for a substantial period of time. Plaintiff last worked on July 3, 2004, which was only one week after the truck on the invoice was serviced. Consequently, the invoice produced has not been found to have been related to incident in question.
10. Despite the lack of documentation, it was clear that plaintiff, in fact, did ride up the lift in a black truck, helped Jack Jackson perform a task which required two technicians and then jumped down from the lift. The fact that he jumped down from the lift was an unusual occurrence which interrupted his regular work routine. It was also out of the ordinary for him to land on the metal brace. He thereby sustained an injury by accident arising out of and in the course of his employment.
11. Plaintiff did not report the injury to his employer as he should have. He tried to ignore it, thinking it would resolve with time. However, he did tell his supervisor about the incident and the fact that he was still in pain from it within a couple of weeks. With the ambient noise and the pressures of work, Mr. Flippin did not understand him. Nevertheless, the injury was reported at that time. Plaintiff submitted a Form 18 giving written notice to his employer on July 8, 2004 before he went to the orthopedic surgeon. Defendants have not shown that they were prejudiced by the delay in receiving written notice.
12. As a result of this injury by accident, plaintiff materially aggravated pre-existing avascular necrosis so that the bone surface of his hip was damaged and so that he required medical treatment. He was unable to work in any capacity from July 5, 2004 to the date of hearing on December 1, 2004 as a result of the injury. Dr. Bolstad had not released him to return to work as of his last office visit of record on December 8, 2004. Plaintiff had also not reached maximum medical improvement by that time.
13. Plaintiff's average weekly wage was $592.91.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On an unknown date in late May or early June 2004, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's claim is not barred by his failure to give written notice of his injury to his employer within thirty days in that defendant should have had actual knowledge of the injury and was not prejudiced by the delay in receiving written notice. N.C. Gen. Stat. § 97-22.
3. Plaintiff is entitled to compensation for temporary total disability at the rate of $395.28 per week from July 5, 2004 through the date of hearing on December 1, 2004 and continuing thereafter until he returns to work or until further order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to have defendants provide all medical compensation arising from this injury by accident. N.C. Gen. Stat. §§97-2(19); 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay compensation to plaintiff for temporary total disability at the rate of $395.28 per week from July 5, 2004 through December 1, 2004 and continuing thereafter until he returns to work or until further order of the Industrial Commission. That portion of this compensation which has accrued shall be paid in a lump sum. This award is subject to the attorney's fee hereinafter approved.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident.
3. An attorney's fee in the amount of twenty-five percent of the compensation awarded is approved for plaintiff's counsel. Defendants shall deduct the fee from the accrued compensation to pay him directly and shall thereafter pay him every fourth check.
5. Defendants shall pay the costs.
This the 17th day of October 2005.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER